# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>) Case No. 1:17CR00036<br>) Case No. 1:17CR00029 |
| v. | )<br>) **OPINION AND ORDER**<br>) |
| DWIGHT L. BAILEY, | ) By: James P. Jones<br>) United States District Judge |
| Defendant. | ) |

*Daniel P. Bubar, First Assistant United States Attorney, Roanoke, Virginia, and Janine M. Myatt, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Dennis E. Jones, Abingdon, Virginia, for Defendant.*

A jury has convicted the defendant, a physician, of conspiring to distribute and distributing controlled substances without a legitimate medical purpose and beyond the bounds of medical practice, as well as maintaining a place for the purpose of unlawfully distributing controlled substances. He has moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, and alternatively for a new trial pursuant to Federal Rule of Criminal Procedure 33, arguing that the government's evidence was insufficient to sustain his convictions by the jury. For the following reasons, I will deny the motions.

I.

Defendant Dwight L. Bailey was a primary care physician who began practicing medicine in 1980. From 1993 to 2014, Dr. Bailey owned a medical

practice in Lebanon, Virginia. Dr. Bailey's wife, Deborah Bailey, served as the business manager of the practice, which was divided into two entities — Family Healthcare Associates of Southwest VA, P.C., a traditional medical practice, and Ridgewood Health Care Clinic, a designated rural health clinic. During the course of its operation, the practice employed laboratory and office staff, nurses, and nurse practitioners. It also employed another physician, Kevin Combs, D.O. The practice treated patients for a wide variety of ailments, including pain management. In 2006, Dr. Bailey started a drug treatment program within the practice, in which he utilized Suboxone (buprenorphine and noloxone) to treat individuals who suffered from opioid addiction. Dr. Bailey's practice ended in 2014, when the Virginia Board of Medicine suspended his medical license.

Dr. Bailey was indicted in case number 1:17CR00029 on September 26, 2017. Three of the five counts in that Indictment were later dismissed without prejudice on the government's motion. Dr. Bailey was indicted in case number 1:17CR00036 on November 28, 2017. The two Indictments were joined for trial. *See* Fed. R. Crim. P. 13. After a nine-day trial beginning on July 16, 2018, the jury returned a verdict convicting Dr. Bailey of all charges. Those charges were as follows:

- Case number 1:17CR00029, Count Two. Distributing Suboxone, a Schedule III controlled substance, without a legitimate medical purpose and beyond the bounds of medical practice, to Patient #1

(also referred to as "WC"), on October 4, 2012, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(E);

- Case number 1:17CR00029, Count Three. Distributing Suboxone, a Schedule III controlled substance, without a legitimate medical purpose and beyond the bounds of medical practice, to Patient #1 ("WC"), on November 5, 2012, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(E);

- Case number 1:17CR00036, Count One. Conspiring to distribute Roxicodone (oxycodone), Dilaudid (hydromorphone), Opana ER (oxymorphone), and Percocet (acetaminophen and oxycodone), all Schedule II controlled substances, without a legitimate medical purpose and beyond the bounds of medical practice, to individuals "AC," "CM," "JP," "JT," "RC," and "TP," in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846;

- Case number 1:17CR00036, Count Two. Conspiring to distribute Lortab (hydrocodone and acetaminophen), Norco (hydrocodone and acetaminophen), and Suboxone, all Schedule III controlled substances, without a legitimate medical purpose and beyond the bounds of medical practice, to individuals "CM," "JT," "TP," and "WC," in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(E), 846;

- Case number 1:17CR00036, Count Three. Conspiring to distribute Ambien (zolpidem), Klonopin (clonazepam), Xanax (alprazolam), Valium (diazepam), and Restoril (temazepam), all Schedule IV controlled substances, without a legitimate medical purpose and beyond the bounds of medical practice, to individuals "AC," "CM," "JP," "JT," "RC," and "TP," in violation of 21 U.S.C. §§ 841(a)(1), (b)(2), 846;

- Case number 1:17CR00036, Counts Four through Twenty-Seven. As a principal or aider and abettor, distributing Schedule II controlled substances, Percocet and Roxicodone, without a legitimate medical purpose and beyond the bounds of medical practice, to individuals "CM" and "JP," all in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), (b)(1)(C);

- Case number 1:17CR00036, Count Twenty-Eight. As a principal or aider and abettor, distributing a Schedule III controlled substance, Norco, without a legitimate medical purpose and beyond the bounds of medical practice, to individual "CM," all in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), (b)(1)(E);

- Case number 1:17CR00036, Counts Twenty-Nine through Sixty. As a principal or aider and abettor, distributing Schedule IV controlled substances, Klonopin, Ambien, Diazepam, and Restoril, without a legitimate medical purpose and beyond the bounds of medical practice, to individuals "CM" and "JP," all in violation of 21 U.S.C. § 841(a)(1), (b)(2); and

- Case number 1:17CR00036, Count Sixty-One. As a principal or aider and abettor, knowingly and intentionally maintaining a place for the purpose of unlawfully distributing controlled substances, all in violation of 18 U.S.C. § 2 and 21 U.S.C. § 856(1).

Dr. Bailey has moved for a judgment of acquittal and alternatively for a new trial, arguing that the government failed to present evidence sufficient to allow a jury to find beyond a reasonable doubt that he conspired to distribute, actually distributed, or aided and abetted the distribution of controlled substances without a legitimate medical purpose and beyond the bounds of medical practice. Instead, he asserts that the evidence showed that he made a good-faith effort to treat patients within the accepted standards of medicine. The motion has been fully briefed and orally argued and is now ripe for decision.

II.

On review of a motion for a judgment of acquittal under Rule 29, the court "must sustain the verdict if there is substantial evidence, viewed in the light most

favorable to the Government, to uphold the jury's decision." *Burks v. United States*, 437 U.S. 1, 17 (1978). In the context of a criminal conviction, substantial evidence is evidence that "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Newsome*, 322 F.3d 328, 333 (4th Cir. 2003).[1] The court should consider "circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). However, the court must not weigh the evidence or assess the credibility of witnesses, since this is the job of the jury. *Burks*, 437 U.S. at 17.

Rule 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The paradigmatic use of a Rule 33 motion is to seek a new trial on the ground that the jury's verdict was against the manifest weight of the evidence." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). Further, courts have "widely agreed that Rule 33's interest of justice standard allows the grant of a new trial where substantial legal error has occurred." *Id.* "[A]ny error of sufficient magnitude to require reversal on appeal is an adequate

---

[1] I have omitted internal quotation marks, citations, and alterations throughout this opinion, unless otherwise noted.

ground for granting a new trial." *United States v. Wall*, 389 F.3d 457 (5th Cir. 2004).

A.

Dr. Bailey contends that no reasonable juror could find the government's evidence sufficient to convict him of Counts Two and Three in case number 1:17CR00029, which charged him with unlawfully distributing Suboxone to WC. Dr. Bailey argues that the government's evidence that WC's prescriptions lacked a legitimate medical purpose and were beyond the bounds of medical practice was insufficient because it consists solely of expert testimony regarding general prescribing patterns for WC, and WC did not testify at trial.

In support of this argument, Dr. Bailey relies on *United States v. Tran Trong Cuong*, 18 F.3d 1132 (4th Cir. 1994). In *Tran*, a doctor appealed his convictions on 127 counts of distributing controlled substances outside the bounds of medical practice, arguing that for 80 of the counts, the evidence was insufficient to convict him because the patients whose prescriptions gave rise to those counts did not testify at trial. *Id.* at 1137. Instead, the government's case for those 80 counts was based on expert testimony and the expert's report on his examination of patient files. *Id.* at 1141. The court stated regarding this expert testimony:

> Dr. MacIntosh did not mention any of the 20 patients who did not testify . . . . He did not discuss these patients by name nor did he comment on the prescriptions they had received. He neither examined nor interviewed any of these patients. No effort was made by the prosecution to focus his testimony on any of these 80 counts.

*Id.* The court also noted that:

> Although the [expert] witness admitted that he did not have sufficient information from some of the charts to conclude that the prescriptions were improper, these charts were included in the [report] and also formed the basis of separate counts in the indictment, simply because they followed a pattern.

*Id.* The court in *Tran* held that this evidence was insufficient to convict the defendant on the 80 counts at issue because it risked a conviction based on guilt by association or by proof of a pattern. *Id.* at 1142. The court stated that instead, "[a] defendant is entitled to individual consideration of every count in an indictment by the jury and evidence sufficient to convict on each count beyond a reasonable doubt." *Id.* In a later case, the Fourth Circuit clarified its holding in *Tran*, stating, "In *Tran Trong Cuong*, we reversed the convictions, not because the victims did not testify, but rather because their lack of testimony was not replaced by any substantive evidence." *United States v. Singh*, 54 F.3d 1182, 1188 (4th Cir. 1995).

The failure of proof in *Tran* is not present in this case. Although WC did not testify, the government put forth other substantive evidence to support the charges stemming from WC's prescriptions. First, the government's expert, Anthony L. Dragovich, M.D., unlike the expert in *Tran*, discussed WC specifically and each of

WC's prescriptions individually. Dr. Dragovich is an expert in pain medicine and anesthesiology. He testified that during the time period at issue, WC was a patient being treated for opioid addiction in Dr. Bailey's Suboxone program. Dr. Dragovich reviewed WC's patient chart and the prescriptions Dr. Bailey wrote for WC, and based on this review, he determined that all of the prescriptions written after March 19, 2007, were not for a legitimate medical purpose. Dr. Dragovich came to this conclusion because these prescriptions were written after a number of drug screens had shown that WC was not taking the Suboxone he had been prescribed and was using marijuana. According to Dr. Dragovich, these drug screens indicated that WC was using the Suboxone inappropriately, and that Dr. Bailey should have put safeguards in place to minimize the risk of abuse. Dr. Bailey continued prescribing Suboxone to WC for two more years, during which time Suboxone did not appear in WC's drug screens. Dr. Dragovich testified that these drug screens suggested that WC was either overusing the prescribed Suboxone ahead of schedule so that it had already left his system by the time of each drug screen, or was not taking it and instead diverting it for money or other drugs. Dr. Dragovich noted that on March 4, 2009, a message in WC's file notified Dr. Bailey that all of WC's drug screens had been negative for Suboxone, and Dr. Bailey still continued the prescriptions. Dr. Dragovich also testified that even after Dr. Bailey spoke with WC on February 8, 2010, and Suboxone began

appearing in WC's drug screens, Dr. Bailey failed due diligence by not ordering confirmation tests to ensure that WC was using his prescriptions appropriately. Dr. Dragovich testified that each of the prescriptions giving rise to Counts Two and Three were issued without a legitimate medical purpose and beyond the bounds of medical practice. Accordingly, there was no risk that Dr. Bailey was convicted of Counts Two and Three based solely on a generalized pattern.

Further, the government presented direct corroborating evidence in addition to its expert's testimony to show that WC's prescriptions lacked a legitimate medical purpose and were beyond the bounds of medical practice. WC's patient file showed drug screen results that were negative for Suboxone but positive for marijuana and other controlled substances during the time that Dr. Bailey was prescribing him Suboxone to treat his opioid addiction. WC's patient file also contained prescription monitoring program reports showing that he was obtaining prescriptions for opiates from other providers during the time that Dr. Bailey was prescribing him Suboxone to treat his addiction.

In addition, two of Dr. Bailey's employees testified that they had alerted Dr. Bailey to WC's inappropriate drug screen results. Jessica Sullivan Powers, a nurse at Dr. Bailey's practice, testified that she had been worried about the absence of Suboxone in WC's drug screens, and she had left a message in WC's file notifying Dr. Bailey of these inappropriate screens. Nadine Rasnake, the lab supervisor for

Dr. Bailey's practice, testified that WC's drug screen results had concerned her, and although she had notified Dr. Bailey of those results, WC continued to test negative for Suboxone. Further, Dr. Bailey admitted in his own testimony that WC had failed to comply with a number of the requirements set out in his Patient Treatment Agreement concerning drug use during the time that Dr. Bailey was prescribing him Suboxone.

I find that a reasonable jury could accept the evidence as adequate and sufficient to show that the prescriptions at issue lacked a legitimate medical purpose and were beyond the bounds of medical practice.

B.

Dr. Bailey also contends that no reasonable juror could find the government's evidence sufficient to convict him of Counts One, Two, and Three in case number 1:17CR00036, which charged him with conspiring to unlawfully distribute Schedule II, Schedule III, and Schedule IV controlled substances. Dr. Bailey asserts that the evidence was insufficient because neither he nor any of the providers who worked with him testified to any agreement or plan to unlawfully distribute controlled substances, and thus the evidence does not establish that Dr. Bailey was a member of any conspiracy.[2]

---

[2] Dr. Bailey does not contend that the evidence was insufficient to show that the prescriptions at issue in these charges were written without a legitimate medical purpose and beyond the bounds of medical practice.

To establish a conspiracy, the government must prove that at some time during the dates charged, two or more persons entered into an agreement or understanding with the purpose of undertaking the prohibited conduct, and the defendant voluntarily joined the conspiracy knowing its purpose and intending to help accomplish that purpose. *United States v. Mills*, 995 F.2d 480, 483 (4th Cir. 1993). The agreement or understanding, and the defendant's participation in it, "need not be explicit; it may be inferred from circumstantial evidence." *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996).

I find that the government presented sufficient evidence for a reasonable jury to conclude that Dr. Bailey was a member of the charged conspiracy. Dr. Combs, who worked in Dr. Bailey's practice beginning in 2008, testified that Mrs. Bailey, who managed the practice, had told him that the practitioners should follow Dr. Bailey's practice guidelines for the clinic and function as a unit. Dr. Combs also testified that Mrs. Bailey had encouraged the practitioners to keep patients coming to the practice, and he had written narcotic prescriptions in order to do so. When Dr. Combs started at the practice, he was given patients who had been seeing Dr. Bailey, and Dr. Combs learned his prescribing practices by reviewing what those patients had been prescribed and continuing the same prescribing practices. Dr. Combs testified that when he took it upon himself to dismiss patients who were abusing their medications, Mrs. Bailey had "reeducated" him and stopped him

-11-

from doing so. Trial Tr. 79, July 18, 2018, No. 1:17CR00036, ECF No. 105. Nurse practitioner Shelly Miller also testified that her patients had been prescribed controlled substances for a long time when she took over their care, and she continued the same prescriptions because Dr. Bailey had been doing so.

Both Dr. Combs and Miller testified that they had changed their treating and prescribing practices after they left Dr. Bailey's practice. In addition, Tim Allen, a retired pharmacist who owned and worked at a pharmacy in Lebanon, Virginia, testified that the medical practitioners had prescribing practices similar to Dr. Bailey's when they worked at his practice, but when they left, they wrote fewer prescriptions for controlled substances.

This evidence was sufficient for a reasonable jury to conclude that an understanding existed between Dr. Bailey, Mrs. Bailey, and the other providers at the practice to write prescriptions for controlled substances in accordance with Dr. Bailey's prescribing practices, in violation of law.

C.

Dr. Bailey also argues that no reasonable juror could find the government's evidence sufficient to convict him of all the counts in case number 1:17CR00036 relating to patient CM.[3] These counts charged him, as a principal or aider and abettor, with unlawfully distributing and causing the distribution of Schedule II,

---

[3] Counts 4, 5, 6, 7, 28, 29, 30, 31, 32, 33, 34, 35, and 36 of case number 1:17CR00036 relate to patient CM.

Schedule III, and Schedule IV controlled substances to CM. Dr. Bailey contends that the evidence was insufficient because the government expert's testimony that the prescriptions at issue were written without a legitimate medical purpose and beyond the bounds of medical practice was based on generalized patterns.

I find that the government presented sufficient evidence for a reasonable jury to conclude that CM's prescriptions lacked a legitimate medical purpose and were beyond the bounds of medical practice. As was the case for patient WC, the government's expert discussed CM specifically and each of CM's prescriptions individually. Dr. Dragovich reviewed CM's patient chart and prescriptions, and based on this review, he determined that all of the prescriptions written after April 1, 2014, were not for a legitimate medical purpose. Dr. Dragovich testified that during the seven years that the practice had treated CM leading up to this date, CM had repeated issues complying with her treatment regimen, including multiple negative drug screens, an overdose, and lost medications. Dr. Dragovich stated that after a number of CM's drug screens were negative for her medications, the practice should have known that she had issues complying with the regimen. He noted that despite these issues, the practice had continued CM on a high-risk regimen. Dr. Dragovich then testified that in his opinion each of the prescriptions at issue were written without a legitimate medical purpose and beyond the bounds of medical practice.

Further, the government presented direct corroborating evidence in addition to its expert's testimony to support the charges relating to CM. CM's patient file showed that during the time that Dr. Bailey's practice prescribed her controlled substances, she had a number of inappropriate drug screens, she failed pill counts meant to confirm that she was taking her medications as prescribed, she was hospitalized for overdoses five times, and she reported her medications stolen three times in order to obtain new prescriptions. CM testified that during this time, she had been convicted of driving under the influence of drugs. She also testified that when Dr. Combs left Dr. Bailey's practice in 2011, she had followed him to his new practice, but she returned to Dr. Bailey's practice in part because Dr. Combs's practice had taken her off pain medication. She also testified that since Dr. Bailey's practice closed, she has not been prescribed any prolonged course of narcotic medication by other medical practitioners.

D.

Lastly, Dr. Bailey argues that no reasonable juror could find the government's evidence sufficient to convict him of all the counts in case number 1:17CR00036 relating to patient JP.[4] These counts charged Dr. Bailey, as a principal or aider and abettor, with unlawfully distributing and causing the distribution of Schedule II and Schedule IV controlled substances to JP. Again,

---

[4] Counts 8–27 and 37–60 of case number 1:17CR00036 relate to patient JP.

Dr. Bailey contends that the evidence was insufficient because the government expert's testimony was based on generalized patterns.

I find that the government presented sufficient evidence for a reasonable jury to conclude that JP's prescriptions lacked a legitimate medical purpose and were beyond the bounds of medical practice. Dr. Dragovich reviewed JP's patient chart and prescriptions, and testified that the patient was on a complex, high-risk prescription regimen. He testified that after Dr. Bailey's practice had received an anonymous call that JP may have been abusing her medications and had been subjected to detoxification, and after she had failed to comply with a pill count as requested, her prescription regimen should have been changed or she should have been counseled. Dr. Dragovich also testified that Dr. Bailey's office records contained a note from Southwest Virginia Mental Health Facility stating that JP had been admitted after an overdose, and if the practice had known about this admission, all prescriptions written after that were without a medical purpose.

Dr. Bailey argues that the expert's evidence is insufficient because it was not shown that Dr. Bailey's practice knew that JP had been admitted to a mental hospital during her treatment.

The government presented direct corroborating evidence in addition to its expert's testimony to support the charges relating to JP. JP's patient file showed that during the time that Dr. Bailey's practice was prescribing her controlled

substances, she had a number of inappropriate drug screens, she was getting prescriptions for opiates from another source, she was hospitalized for overdoses on four occasions, and there had been an anonymous complaint that she was abusing her medications and had detox treatment, among other things. JP's daughter, Crystal Baker, testified that she had personally told Dr. Bailey that her mother was a drug addict and was abusing the medications that he was prescribing for her, but her mother still continued to receive such prescriptions. In addition, JP herself testified that she had been addicted to her medications and had been frequently hospitalized for overdoses during the time that she had been treated at Dr. Bailey's practice. JP also testified that after the practice had closed, she went through drug withdrawal and has since been in substance abuse treatment.

In light of this evidence, Dr. Bailey's contention that it was not directly shown that his medical practice was aware that JP had been admitted to Southwest State Mental Health Facility does not constitute a failure of the necessary proof of guilt. Even assuming that the practice did not know of this fact, a reasonable jury could accept the remaining evidence about patient JP as sufficient to conclude that the prescriptions at issue were written without a legitimate medical purpose and beyond the bounds of medical practice.[5]

---

[5] Dr. Bailey does not raise any separate arguments regarding the sufficiency of the evidence to convict him of Count 61 in case number 1:17CR00036, which charged him

E.

Although Dr. Bailey moves for a new trial in the alternative to a judgment of acquittal, his motion does not make any specific arguments as to why the court should grant a new trial. However, I do not find that the interest of justice requires a new trial. In light of the evidence discussed above, I find that the jury's verdict was not against the manifest weight of the evidence. Further, Dr. Bailey has not raised any substantial legal errors that would require granting a new trial.

III.

For the foregoing reasons, it is **ORDERED** that the defendant's Motion for Judgment of Acquittal and/or in the Alternative Motion for a New Trial, ECF No. 119 (Case No. 1:17CR00036) and ECF No. 104 (Case No. 1:17CR00029), is DENIED.

ENTER: January 24, 2019

/s/ *James P. Jones*
United States District Judge

---

with knowingly and intentionally maintaining a place for the purpose of unlawfully distributing controlled substances.